STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ROBERT FRANK, ALIAS "BOBBIE," PLAINTIFF IN ERROR.

Submitted December 7, 1916—Decided March 27, 1917.

1. On a prosecution for keeping a disorderly house, evidence of acts and conduct upon the part of the defendant tending to show that he was occupying the house and using it as his own, and exercising the same control over it that men usually have over their own houses, is sufficient to authorize the jury to find that he kept the house.

2. On a prosecution for keeping a disorderly house, evidence that the defendant exhibited at his house a chart showing horses' names, where running, and the odds that he laid against them; that his patrons there present delivered to him the money which they bet, together with slips recording their names, the horses' names, and the odds; and that when his patrons won the defendant paid the winnings, is sufficient to justify the jury in

finding that betting upon horse racing was carried on, even though there was no more definite proof that the races had been actually run.

3. On a prosecution for keeping a disorderly house, testimony given by detectives in the employ of the state that bets on horse races were made by them, and by others in their presence, with the defendant at his house, was competent evidence, its weight and credibility being for the jury to determine.

4. Although certain sentences in a charge, taken alone, need some amplification to render them accurate, yet if such amplification be given in the context, so that the jury cannot be misled, there is no error justifying reversal.

5. On a prosecution for keeping a disorderly house, the state asked a witness, "Do you know where this defendant's place is?" Against the defendant's objection, the judge directed the witness to answer "yes or no." The witness answered "Yes." Then without any further objection the state asked "Where?" and the witness answered "800 Park avenue, Hoboken," and gave testimony as to the presence, acts and conduct of the defendant there (no part of which defendant denied), from which the jury could and did find that the defendant kept the house. *Held*, that even if the question objected to was improper, it could not have prejudiced the defendant in maintaining his defence upon the merits, and so should not result in a reversal.

6. Upon trial of an indictment, where the defendant fails to testify in his own behalf to deny inculpatory facts, which if false he must know to be so, it is proper for the trial judge to call attention to his failure to testify.

On writ of error to the Hudson Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices TRENCHARD and BLACK.

For the plaintiff in error, *Harlan Besson*.

For the defendant in error, *Robert S. Hudspeth*, prosecutor of the pleas, and *George T. Vickers*, assistant prosecutor of the pleas.

The opinion of the court was delivered by

TRENCHARD, J. The plaintiff in error was convicted in the Hudson Quarter Sessions on an indictment charging him with maintaining a disorderly house.

The indictment charged, among other disorderly acts within the defendant's house, "betting, staking and wagering certain large sums of money on the competitive running or racing of horses," and at the trial the testimony was mainly directed to proving that charge.

We have considered every assignment of error argued by the defendant and find none requiring reversal.

The defendant contends that a verdict should have been directed in his favor.

This contention is based, first, upon the assertion that there was no evidence that the defendant kept the place in question.

We think there was evidence tending to show that fact. Several witnesses testified to acts and conduct upon the part of the defendant tending to show that he was occupying the house, and using it as his own, and exercising the same control over it that men usually have over their own houses— and that was sufficient to authorize the jury to find that he kept the house.

The argument in favor of a directed verdict is also based upon the proposition that there was no proof that any bets were there made upon horse races.

We think this also is not well founded. There was evidence that the defendant exhibited a chart containing the names of the horses, where running, and the odds which he laid against them; that his patrons there present delivered to him the money which they bet, together with slips recording their names, the horses' names and the odds; that when his patrons won the defendant paid the winnings. Such evidence tended to support the charge of the indictment that the illegal practice of betting upon the racing of horses was carried on, even though there was no more definite proof that the races had been actually run. *Ames* v. *Kirby*, 71 *N. J. L.* 442.

It is further contended that there could be no conviction because the only evidence supporting it was given by detectives in the employ of the state, who testified that bets on horse races were made by them, and by others in their presence, with the defendant at his house.

But we think such evidence entirely competent, its weight and credibility, of course, being for the jury to determine.

There is no merit in the contention that the trial judge "incorrectly instructed the jury as to the meaning of the crime 'disorderly house' and the *quantum* of proof required to convict the defendant of being the keeper thereof."

In support of this complaint the defendant lays hold of certain sentences of the charge and says that therein the judge did not point out that it was necessary in order to convict that the jury must find that the defendant *knowingly and habitually* permitted men to assemble there and bet on horse races. But that is no ground for reversal when we consider other parts of the charge. Both before and after the sentences referred to, the judge repeatedly instructed the jury, in effect, that to convict it was essential to find that the defendant *knowingly and habitually* permitted men to assemble in his place for the purpose of betting money on the racing of horses. The rule is, that although certain sentences in a charge, taken alone, need some amplification to render them accurate, yet if such amplification be given in the context, so that the jury cannot be misled, there is no error justifying reversal.

It is next said that the trial judge erred in allowing the prosecutor of the pleas to ask a witness called by him this question: "Do you know where this defendant's place is?" The defendant objected upon the ground that "it has not been established that it was this defendant's place; it includes an assumption that he owned and conducted some place." The judge directed the witness to answer "yes or no." The witness answered "yes." Then, without any further objection, the prosecutor asked "Where?" and the witness answered "800 Park avenue, Hoboken," and in answer to further questions gave testimony as to the presence, acts and conduct of the defendant there (no part of which the defendant denied) from which the jury could, and did, find that the defendant kept and controlled the place. Our conclusion is, that even if the question objected to was improper (which we do not decide), it could not have prejudiced the defendant in maintaining

his defence upon the merits, and so should not result in a reversal.

It is argued that the judge erred in calling attention to the defendant's failure to testify. Not so. Numerous witnesses testified that the defendant was present in the house where the gambling was carried on; that he had charge of the gambling instrumentalities, and personally took the money, kept the records and paid the winnings to his patrons. These were inculpatory facts which, if false, he knew to be so, and his failure to testify in his own behalf in denial of them, rendered it proper for the trial judge to call attention to his failure to testify. *State* v. *Callahan,* 77 *N. J. L.* 685.

The judgment below will be affirmed.